CASE 3—BASTARDY—DECEMBER 4.

# Francis, of color, vs. Commonwealth.

APPEAL FROM HARRISON CIRCUIT COURT.

1. Proceedings in cases of bastardy are not criminal but civil proceedings, the chief object of which is the benefit of the mother and child. (*Chandler vs. Commonwealth*, 4 *Metcalfe*, 67, *and cases cited*.)

2. Since the universal abolishment of slavery throughout the United States by constitutional amendment, and the passage of the act of February 14, 1866 (*Myers' Sup.*, 735), an unmarried negro woman may make the necessary affidavit, under the second section of said act, to sue out a warrant in bastardy against a negro man, as provided in chapter 6, Revised Statutes (1 *Stant.*, 198).

3. In the proceedings allowed by law in cases of bastardy, at the instance of the mother, in the name of the Commonwealth, the mother is nowise liable for the costs; therefore, whether she be insolvent or a minor, matters not, if she be competent otherwise to make the necessary affidavit. Nor is it necessary that the warrant shall show that the mother is unmarried; if the evidence manifests that fact, it is sufficient.

4. In proceedings in cases of bastardy, the accused has the right to testify in his own behalf under *section 7, chapter 6, 1 Stanton's Revised Statutes*, 200. But if, on motion of accused, by order of court, the wit-

nesses were to be separately examined, and because he remained and heard the evidence of the witnesses, the reason of the rule would not exclude his evidence, as he had a right to remain and hear the testimony and cross-examine the witnesses. But, notwithstanding the court below may have erroneously refused to permit him to testify for this reason, the court of appeals will not, for this error alone, reverse the judgment of the court below, when the record does not intimate that he would have contradicted the evidence for the Commonwealth, or even stated a fact the least calculated to exonerate him from the charge, or when the record gives no assurance that he would have so testified. *The court further say:* "As we cannot know he would have stated any fact in his own behalf, we cannot say the court erred to his prejudice."

W. W. TRIMBLE,                    For Appellant,
CITED—

*Act of* 1795, *M. & B., page* 238.
*Rev. Stat.,* 1 *Stant.,* 198 ; *Myers' Sup.,* 62–64.
5 *Mon.,* 214 ; 1 *J. J. M.,* 310.
4 *Metcalfe,* 66 ; *Chandler vs. Commonwealth.*
*Act of Feby.* 14, 1866 ; *Myers' Sup.,* 735.

JAMES A. DAWSON,                  On same side,
CITED—

*Myers' Sup.,* 62, 735 ; *Act of Feby.* 14, 1866.
*Civil Code, secs.* 19, 54.
*Littell's Select Cases,* 88 ; *Schooler vs. Commonwealth.*
6 *J. J. Mar.,* 588 ; *Scanlan vs. Commonwealth.*
4 *Metcalfe,* 70 ; *Chandler vs. Commonwealth.*

JOHN RODMAN, Attorney General,        For Appellee,
CITED—

*Myers' Sup., pp.* 62, 635, 64.

JUDGE WILLIAMS DELIVERED THE OPINION OF THE COURT:

This is a proceeding in bastardy, instituted at the instance of Rebecca Hayden, a single woman of color, against appellant, a man of color, charging him with being the father of her bastard child.

The jury found him guilty, and that he should pay thirty-nine dollars annually, for six years, towards the support of the child, and the court so adjudged. He has brought up this judgment for revision, and assigns for error—

1. That the statutes of this State do not authorize a woman of color to swear out a warrant of bastardy against any one.

2. That the court improperly refused to let appellant testify in the cause.

3. That the mother is a minor, and therefore could not institute these proceedings without a guardian or *prochein amy*.

As has been frequently held by this court, "this is not a criminal but a civil proceeding, the chief object of which is the benefit of the mother and child." (*Chandler vs. Commonwealth*, 4 *Metcalfe*, 67, *and authorities there referred to*.)

Since the revision of our statutes, in 1850–1, down to 1866, all the enactments on this subject have limited the right to sue out a warrant in bastardy to unmarried white women; but after the universal abolishment of slavery throughout the United States by constitutional amendment, our Legislature, by an act approved February 14, 1866 (*Myers' Sup.*, 735), enacted "that all negroes and mulattoes *may sue and be sued, plead and be impleaded*, in all courts of law and equity of this State."  *  *  *  *  And that they " may, *by affidavit*, charge any person with any criminal offense against his or her person or property."  *  *.  *  *  "And it shall be lawful for any negro or mulatto, in any action, suit, or *controversy*, pending or to be instituted *in any court of law or equity* of this State, *in which they are parties interested*, to make all needful and lawful affidavits as shall be necessary for the institution,

prosecution, or defense of such action, suit, or *controversy;*" and "that negroes and mulattoes shall be competent witnesses in all civil proceedings in which negroes and mulattoes are the only parties interested."

By subdivision 7 of section 670, Civil Code, as amended by act of January 10, 1866, negroes, mulattoes, and Indians are rendered incompetent to testify where a white person, in his own right, or as representative of a white person, is a party, "*except* in actions brought to recover a penalty or forfeiture for a violation of law against a negro, or mulatto, or Indian."

Now, as this was a civil proceeding for the benefit of the mother and child, and a *controversy* in which they were interested, it is apparent that the mother might make the necessary affidavit under the second section of the act of February 14, 1866, though she was a negro.

The object of said enactment was to confer upon this recently liberated class comprehensive civil rights, not only as against each other, but all classes and individuals, whilst it did secure more extended and perfect rights against individuals of their own race than those of the white race.

There can be no doubt but that the Legislature intended, as between negroes, to give full, ample, and perfect remedies for all wrongs, including all the means known to the law for a vindication of their rights; and very general, but not so comprehensive, means as to controversies with white persons.

The accused had a right to testify under *section 7, chapter 6, 1 Stanton's Revised Statutes,* 200 ; but, on his motion, by order of court, the witnesses were to be separately examined; and, although the rule may not apply in its reason to a party because he is entitled to hear the witnesses and cross-examine, yet the record does not inti-

mate that he would have contradicted the evidence for
the Commonwealth, or even stated a fact the least calcu-
lated to exonerate him from the charge, nor can we know
or even judge, from this record, that he would have so
testified ; and unless we had some assurance from the
record that he would have so testified, we cannot ad-
judge that any wrong was done him.   It is not the mere
privilege of being sworn that the statute secures, but the
right to testify in his own behalf.   As we cannot know
he would have stated any fact in his own behalf, we
cannot say the court erred to his prejudice.

Nor do we think that any security for cost was neces-
sary.   This is a special proceeding allowed by law at the
instance of the mother, in the name of the Common-
wealth ; but the mother is in nowise responsible for the
costs ; therefore, whether she be insolvent or a minor,
matters not, if she be competent otherwise to make the
necessary affidavit.

Nor need the warrant show that the mother is an un-
married woman ; if the evidence, as in this case, mani-
fests this, it is sufficient. *

The judgment is affirmed.